UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
--------------------------------------------------------x
GARCELLE N. MENOS,

                        Plaintiff,

          - against -

UNCLE NEAREST, INC. and FAWN
WEAVER,

                      Defendants.
--------------------------------------------------------x

**<u>MEMORANDUM & ORDER</u>**
22-CV-1449 (PKC) (PK)

PAMELA K. CHEN, United States District Judge:

       Plaintiff Garcelle N. Menos ("Plaintiff" or "Menos") brings this lawsuit against her former employer, Defendants Uncle Nearest, Inc. ("Uncle Nearest") and Fawn Weaver ("Weaver"), (collectively, "Defendants"), alleging sex discrimination and retaliation under the New York City Human Rights Law ("NYCHRL"), N.Y.C. Admin. Code § 8-107, and the New York State Human Rights Law ("NYSHRL"), N.Y. Exec. L. § 296 *et seq.*, and a violation of New York Labor Law ("NYLL") §§ 191 and 191-b for unpaid commission and bonuses. (*See* Am. Compl., Dkt 35 ("Am. Compl."), at ¶¶ 96–134.) Before the Court is Defendants' motion for summary judgment. For the reasons set forth below, Defendants' motion for summary judgment is denied in part and granted in part.

## BACKGROUND

I.    **Relevant Factual Background[1]**

Uncle Nearest is a whiskey company founded in 2016 by Fawn Weaver, who, at all relevant times, served as Uncle Nearest's Chief Executive Officer.  (Pl.'s 56.1[2] ¶¶ 1, 3.)  As of July 2021, Uncle Nearest had less than 100 employees.  (*Id.* ¶ 2.)  Plaintiff worked as a full-time Brand Steward for Uncle Nearest in the New York City area starting in October 2020 until her resignation in December 2021.  (*Id.* ¶¶ 5, 128.)

As discussed more fully below, in July 2021, Plaintiff sent a letter to Weaver through her legal counsel raising claims of sexual harassment and hostile work environment related to a series

---

[1] Unless otherwise noted, a standalone citation to a party's Local Rule 56.1 statement denotes that this Court has deemed the underlying factual allegation undisputed.  Any citation to a 56.1 statement incorporates by reference the documents cited therein; where relevant, however, the Court may cite directly to an underlying document.  The Court construes any disputed facts in the light most favorable to Plaintiff for purposes of Defendants' summary judgment motion.  *See Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 157 (1970).  However, where either party (i) admits or (ii) denies without citing to admissible evidence certain of the facts alleged in the other's 56.1 statement, the Court may deem any such facts undisputed.  *See* Loc. Civ. R. 56.1(c)–(d).

The Court notes that following Plaintiff's Response to Defendants' 56.1 Statement, rather than continuing the numbering used by Defendants, Plaintiff's Counterstatement pursuant to Local Rule 56.1(b) restarts its numbering at paragraph one.  (*See* Pl.'s R. 56.1 Statement and Counterstatement, Dkt. 50-1, at 22.)  To avoid confusion, the Court distinguishes between Plaintiff's Response to Defendants' 56.1 Statement (Dkt. 50-1 at 1–22, "Pl.'s 56.1") and Plaintiff's 56.1(b) Counterstatement (Dkt. 50-1 at 22–42, "Pl.'s Counterstat.").

[2] Defendants object to Plaintiff's 56.1 Statement, arguing that Plaintiff's denial of certain facts as "incomplete" is not a valid basis to deny under the Local Rules and that Plaintiff's Counterstatement is "duplicative of the facts in Defendants' 56.1 Statement, (re-)characterizes deposition testimony which speaks for itself, and states immaterial or undisputed facts."  (*See* Defs.' Reply Supp. Mot. Summ. J., Dkt. 48 ("Defs.' Reply"), at 1–2.)  Though the Court declines to reject Plaintiff's 56.1 Response and Counterstatement in its entirety, the Court will consider undisputed facts that Plaintiff fails to specifically controvert with evidence.  Further, the Court will not consider "factual assertions" in Plaintiff's Counterstatement "that are otherwise unsupported in the record," *Giannullo v. City of New York*, 322 F.3d 139, 140 (2d Cir. 2003) (citation omitted), or "legal conclusions contained in the various [56.1] statements[,]" *Lyons v. Lancer Ins. Co.*, 681 F.3d 50, 52 (2d Cir. 2012) (citation omitted).

of incidents with her supervisor, David Harper ("Harper"), the Vice President of Sales, East.  (*Id.* ¶¶ 82, 8; Notice of Sexual Harassment, Dkt. 50-8, at ECF[3] 2–3.)  The parties dispute the nature of Plaintiff's underlying allegations against Harper, as well as the circumstances that followed Plaintiff's internal complaint.  The Court briefly recites the relevant facts, construed in the light most favorable to Plaintiff.

## A.    Hiring of Plaintiff Menos

In August 2020, Plaintiff applied to work as a Brand Steward at Uncle Nearest and had phone interviews with Weaver, Harper, and Uncle Nearest's Chief Business Officer Katharine Jerkens ("Jerkens").  (Pl.'s 56.1 ¶¶ 13–16.)  Plaintiff met Harper for lunch at a restaurant in Manhattan in September 2020, during which Harper offered Plaintiff the position and Plaintiff accepted.  (*Id.* ¶ 17; Menos Dep., Dkt. 50-5 ("Menos Dep."), at 97:2–11.)  Plaintiff testified that, during the lunch, Harper discussed "the culture of the Company" and "how it goes like a family." (Pl.'s 56.1 ¶ 18.)  Harper asked her during the lunch whether she had a "significant other"[4] and when she replied yes, Harper said, "that's family too."  (*Id.* ¶ 19.)  Plaintiff did not complain to anyone at Uncle Nearest that Harper asked about her significant other at lunch.  (*Id.* ¶ 22.)  Plaintiff began working for Uncle Nearest on or about October 12, 2020.  (*Id.* ¶ 5; Offer Ltr., Dkt. 50-6, at ECF 2.)

---

[3] Citations to "ECF" refer to the pagination generated by the Court's CM/ECF docketing system and not the document's internal pagination.

[4] Plaintiff testified that Harper used the terms "significant other" and "loved one" interchangeably, (Menos Dep. at 197:23–198:6), but that at the September 2020 lunch, he used the term "significant other," (*id.* at 196:13–21).

### B.    Plaintiff's Employment with Uncle Nearest

Plaintiff's responsibilities as a Brand Steward included promoting and selling Uncle Nearest whiskey to restaurants and bars in New York City.  (Pl.'s 56.1 ¶ 7.)  Plaintiff worked remotely out of her home and would also visit restaurants and bars in New York City on behalf of Uncle Nearest.  (*Id.* ¶ 6; Menos Dep. at 129:13–22.)  At the start of her employment, Plaintiff reported directly to Harper.  (*Id.* ¶ 8.)  Steve Michielli ("Michielli"), Uncle Nearest's Market Manager, also reported to Harper.  (*Id.* ¶ 9.)  The parties dispute the scope of Plaintiff's working relationship with Michielli.  Plaintiff testified that she interacted with Michielli "on a weekly basis" in order "[t]o make sure business in New York was going well and make sure [she] understood the business in New York," (*id.* ¶¶ 11–12.), but Plaintiff further contends that Michielli was an essential part of her job and would help her fulfill her responsibilities, (*id.*).  Plaintiff testified that she and Michielli "worked on the market together" as he "worked closely with the distributing partners, distributors."  (Menos Dep. at 366:19–22.)

### C.    Harper's Inquiries into Plaintiff's Love Life

Plaintiff testified that, prior to Uncle Nearest's virtual holiday party in December 2020, Harper asked Plaintiff if her "significant other" or "loved one" would be attending.  (Pl.'s 56.1 ¶¶ 23–24; Menos Dep. at 197:15–198:9 (testifying that she did not recall which phrase Harper used because he used them interchangeably).)  Plaintiff did not complain to anyone at Uncle Nearest about this exchange.  (Pl.'s 56.1 ¶ 26.)  Following the December 2020 holiday party, Harper asked Plaintiff about her "loved one" or "significant other" repeatedly, which Plaintiff characterized as "inappropriate casual references" in a "flirtatious tone" that she believed to be "too personal."  (Pl.'s Counterstat. ¶¶ 14–15; Menos Dep. at 206:2–16.)  Plaintiff could not recall

the exact number of times this occurred between January and July 2021, or precise details about Harper's comments.  (Menos Dep. at 207:6–15.)

### D.    The Touching Incidents

Uncle Nearest hosted an in-person employee summit in Tennessee from June 14 to June 20, 2021.  (Pl.'s 56.1 ¶ 31.)  Plaintiff attended the summit, staying at the Joseph Hotel in Nashville, Tennessee, with her significant other, Jerry Boies ("Boies"), who joined her for part of the week.  (*Id.* ¶¶ 32–33.)  During the summit, Plaintiff introduced Boies to Harper and other colleagues as her "boyfriend."  (*Id.* ¶¶ 34–35.)

#### 1.    The June 15, 2021 Incident

On June 15, 2021, a group of Uncle Nearest's employees, including Plaintiff and Harper, walked from the Joseph Hotel to Pinewood Social bowling alley and restaurant for dinner.  (*Id.* ¶ 36.)  On the way to the event, the group had to cross a street, and Harper began crossing in the middle of the street rather than using the crosswalk, which the group advised him against.  (*Id.* ¶ 37; Pl.'s Counterstat. ¶ 19; Menos Dep. at 236:12–19.)  Harper returned to the group, then walked over to Plaintiff and patted her upper back, slid his hand down her back, and "let his hand rest on [her] buttocks momentarily."[5]  (Pl.'s 56.1 ¶¶ 37–38; Menos Dep. at 238:10–25.)  Though Plaintiff testified that she could not recall precisely how long Harper touched her buttocks, she described it as "too many seconds" and that it "felt like forever."  (Pl.'s Counterstat. ¶ 21; Menos Dep. at 239:2–18.)  Plaintiff also described the touching as "groping" or "grabbing," which she views as the same.  (Pl.'s Counterstat. ¶ 20; Menos Dep. at 237:2–18, 241:4–7.)  When this happened, Plaintiff testified that she "kind of froze as everyone kept walking and folks were moving."  (Pl.'s

---

[5] The parties dispute what occurred on the walk to the restaurant on June 15, 2021; "Defendants (and Harper) do not concede that Harper touched Plaintiff's buttocks in any way." (Pl.'s 56.1 ¶ 37, n.3.)

Counterstat. ¶ 21; Menos Dep. at 244:19–22.)  During the incident and on the rest of the walk to the restaurant, Harper and Plaintiff did not speak to each other.  (Pl.'s 56.1 ¶¶ 40–41.)  Plaintiff testified that, at the event at Pinewood Social, she said to Harper, "you touched my butt and I didn't like that. I would prefer you respect my space," to which Harper replied, "I'm sorry, no worries."[6] (Pl.'s Counterstat. ¶¶ 23–24; Menos Dep. at 250:18–251:6.)  Plaintiff did not discuss the incident with anyone else at Pinewood Social, or Boies, that evening.  (Pl.'s 56.1 ¶¶ 43–44; Menos Dep. at 253:2–7, 254:4–17.)

### 2.    The June 19, 2021 Incident

Plaintiff testified that a second incident of touching occurred at the summit on June 19, 2021.  Plaintiff was working at the distillery providing brand education to guests at the event. (Pl.'s 56.1 ¶ 47.)  Around 2:00p.m., Plaintiff called Harper to ask if she was needed for anything else, and he requested that she meet him at the gift shop before leaving.  (Id. ¶¶ 48–49.)  When Plaintiff arrived, there were several other people[7] in the gift shop.  (Id. ¶ 50.)  Harper offered to buy Plaintiff something from the gift shop.  (Id. ¶ 52.)  When Plaintiff declined Harper's offer, Harper thanked her, told her she was doing a great job, and "patted [her] upper back and slid his hand down [her] buttocks."[8]  (Id. ¶ 55; Menos Dep. at 285:12–20.)  Plaintiff described the touching as a "grab" but "not [a] squeeze," and lasting more than a few seconds but less than a minute. (Pl.'s 56.1 ¶¶ 56–57; Menos Dep. at 286:8–15, 288:15–289:6.)  At some point at the gift shop,

---

[6] Plaintiff also contends that Harper was "visibly intoxicated between 7:30pm and 8:30pm" that evening, that his "face was flush red," and that he was "stuttering his speech."  (Pl.'s Counterstat. ¶¶ 24–25; see also Menos Dep. at 251:2–252:4.)

[7] Defendants contend that Uncle Nearest employees Evette Martinez and Kitty Amann were present at the store, but Plaintiff disputes Amann's presence.  (Pl.'s 56.1 ¶ 54.)

[8] The parties dispute what occurred at the gift shop on June 19, 2021; "Defendants (and Harper) do not concede that Harper touched Plaintiff's buttocks in any way."  (Pl.'s 56.1 ¶ 55 n.5.)

Harper said something to Plaintiff along the lines of, "if you have time, enjoy Tennessee." (Pl.'s 56.1 ¶ 59.) Plaintiff did not say anything to Harper or anyone else about what happened in the gift shop at the time, and then left the gift shop. (*Id.* ¶ 58.) Plaintiff was in the gift shop for about five to ten minutes. (*Id.* ¶ 51.) Plaintiff also did not tell Boies about the second incident while at the summit. (*Id.* ¶ 60.)

### E.    Harper's Text Messages

On June 24, 2021, Plaintiff spent a day in New York City with Weaver related to work. (*Id.* ¶ 62.) Harper was supposed to join them for two events that day but was unable to attend because he was sick. (*Id.* ¶ 65.) Plaintiff and Weaver spent the day discussing the events Plaintiff was working on, the industry, and other business. (*Id.* ¶ 68.) Weaver talked about her husband and asked Plaintiff about her significant other. (*Id.* ¶ 63.) They had lunch together, and Weaver asked if Plaintiff enjoyed working with her colleagues in the East, and Plaintiff responded that they were helpful. (*Id.* ¶ 69.) Plaintiff did not tell Weaver during their day together about the alleged touching by Harper. (*Id.* ¶ 71.)

That evening, Plaintiff and Weaver attended a work event with the WNBA that Harper had helped Plaintiff plan. (*Id.* ¶¶ 72–73.) At 4:59 p.m., Harper sent Plaintiff a text message asking, "How did your day go." (*Id.* ¶ 74.) Plaintiff did not respond, and at 10:18 p.m., Harper texted Plaintiff again writing, "??." (*Id.* ¶ 75.) Plaintiff was still working the event at that time, and eventually replied to Harper at 11:21 p.m. saying "it was strange." (*Id.* ¶¶ 76–77.) Harper replied within the minute, "How so. Fill me in you can call. Hardly a voice but I'm available." (*Id.* ¶ 79.) Plaintiff did not reply, and Harper texted "??" at 11:30 a.m. the next morning. (*Id.* ¶ 80.)

**F.      The Complaint and Investigation**

On July 1, 2021, Plaintiff sent a letter via email to Weaver and Jerkens through Boies, then her legal counsel, raising claims of sexual harassment and hostile work environment related to Harper's conduct and asserting that "Uncle Nearest ha[d] no anti-harassment or discrimination policies in place nor did Uncle Nearest ever conduct any harassment training."  (*Id.* ¶ 82; Notice of Sexual Harassment, Dkt. 50-8, at ECF 2.)  Prior to the letter, Plaintiff had not complained about any of the alleged incidents to Weaver or Uncle Nearest, which Plaintiff only disputes to the extent that she confronted Harper after the first touching incident.[9]  (Pl.'s 56.1, ¶ 83.)  After reading the letter, Weaver called Plaintiff, who did not answer, then called Harper, who told Weaver that the alleged incidents never happened.  (*Id.* ¶ 84.)  Weaver then researched online what to do upon receipt of a notice of sexual harassment and decided to hire a third-party investigator.  (*Id.* ¶ 85.)  The same day, Weaver informed Plaintiff and Harper that Plaintiff would now report directly to Weaver instead of Harper.  (*Id.* ¶¶ 86–87.)  Plaintiff never interacted with Harper again.  (*Id.* ¶ 88.)

The following day, on July 2, 2021, Weaver replied to Boies's email with Plaintiff's sexual harassment complaint, copying Plaintiff and Jerkens.  (Weaver Resp. Not. Sexual Harassment, Dkt. 50-3.)  In relevant part, Weaver wrote that she had just spent half a day with Plaintiff in New York and that "[Plaintiff] spoke only positive things about the work environment. [Plaintiff] is incredibly new to our company, and perhaps was not here when we did anti-discriminatory trainings, as well as anti-harassment."  (*Id.* at ECF 2.)  Weaver wrote that she has an "entire company who would one-by-one step onto the stand to fully dispute everything in your letter."  (*Id.*)  She wrote that she would look into Plaintiff's complaint but reiterated that Plaintiff "never

---

[9] Plaintiff also contends that she asked her co-worker Kitty Amann how to report a claim of sexual harassment and discussed the alleged touching incidents with her, though it is unclear from the record when this occurred.  (Menos Dep. at 158:24–159:16, 253:2–14.)

once mentioned (or even alluded) any of this to [Weaver], or [Weaver] would have addressed it directly and immediately," and that she was "incredibly disappointed that a Black woman would not speak to another Black woman, if what [Plaintiff] is saying in fact did happen." (*Id.*)  Weaver wrote she finds "this all incredibly odd" and that she was confident she and Uncle Nearest "will completely and entirely withstand your accusation." (*Id.*)

> The same day, Weaver sent Plaintiff a separate email stating:
>
> [I]f this complaint had been brought to any of the women leaders in my company (which is the entire leadership), we would have certainly addressed this concern immediately and provided remedy.  By contacting an attorney first, you denied any of our female leaders the ability to assist you and to figure out how to make your very short time in our company thus far better.

(Weaver Email to Pl. 7/2/2021, Dkt. 50-9, at ECF 2.)  In the same email, Weaver reiterated that Plaintiff would be separated from Harper "effective immediately," that a third-party investigation would soon be underway, and that Weaver would be Plaintiff's "point person moving forward." (*Id.*)  Weaver stated that "[a]s the leader of this company, I take this complaint seriously and have remedied the issue at hand." (*Id.*)

 In an email exchange between Weaver and Anthony Severini ("Severini") of Genesis Global Recruiting, Inc. ("Genesis Global")[10] on July 7, 2021, Weaver discovered that Uncle Nearest was not in full compliance with all state sexual harassment training requirements— specifically for its Illinois and New York employees, including Plaintiff—which Weaver told Genesis Global was a "pretty big miss on your part."  (Genesis Emails, Dkt 50-10, at ECF 2; Weaver Dep., Dkt. 50-4 ("Weaver Dep."), at 59:16–60:24.)  Severini replied that "they all receive

---

[10] At all relevant times, Uncle Nearest outsourced the logistics for onboarding and HR-related training to Genesis Global, (Pl.'s 56.1 ¶ 4), which Plaintiff disputes to the extent that Weaver represented via email that she "oversee[s] all aspects of [Uncle Nearest]'s work environment," (*id.*; Weaver Resp. Not. Sexual Harassment, Dkt. 50-3, at ECF 2).

our handbook which has a policy around harassment and complaint policies." (Genesis Emails, Dkt. 50-10, at ECF 2.) Harper testified that he "personally [had] not read" an employee handbook, and had no recollection of receiving one or giving one to Plaintiff. (Harper Dep., Dkt. 50-7 ("Harper Dep."), at 78:13–25; 81:2–6.) Plaintiff testified that she never received an employee handbook until October 12, 2021, after lodging her complaint. (Menos Dep. at 509:20–510:14, 513:17–21.)

Weaver hired Kroll Associates, Inc. ("Kroll") to conduct an internal investigation into Plaintiff's allegations. (Pl.'s 56.1 ¶ 89.) In an email to Plaintiff and Plaintiff's then-counsel Boies on July 30, 2021, informing them of the internal investigation, Weaver stated that she had spent many hours with Harper's direct supervisees as part of her "CEO Thank You Tour" and that "their feedback regarding [Harper's] leadership was 100-percent positive," which she shared with the Kroll investigator to "go into the file on this case." (Weaver Email 7/30/2021, Dkt. 50-12, at ECF 2.) John Mazzella ("Mazzella") and Lauren Klein from Kroll conducted the investigation. (Pl.'s 56.1 ¶ 90.) Mazzella interviewed Harper, Weaver, Jerkens, Kitty Amann, and Evette Martinez. (*Id.* ¶ 92.) Plaintiff was also interviewed by Kroll, and Plaintiff took an audio recording of her interview. (*Id.* ¶ 93.)[11] According to Plaintiff, both Weaver and Harper had direct access to Mazzella during the course of the investigation, while Plaintiff did not. (Pl.'s Counterstat. ¶¶ 94–95; Menos Decl., Dkt. 50-20 ("Menos Decl.") ¶ 7; *see* Harper Email to Mazzella 9/21/2021, Dkt. 50-13 at ECF 2.)

---

[11] Plaintiff attested that she recorded the interview because she "believed the investigation would not be impartial because of how Weaver responded to [her] when [she] first lodged [her] complaint. [Weaver] sounded annoyed, perturbed, and skeptical of me." (Pl.'s 56.1 ¶ 93; Menos Decl., Dkt. 50-20 ¶ 12.)

Weaver received a draft of Kroll's investigative report dated October 11, 2021.  (Kroll Rep., Dkt. 50-17, at ECF 2; Weaver Dep. at 126:5–16.)  Plaintiff attested that Weaver never shared the draft report with her and Plaintiff "never had an opportunity to review, critique, or ask questions" regarding the report.  (Menos Decl. ¶ 8.)  Weaver testified that she had a conversation with Kroll about the draft report related to Genesis Global mishandling its assigned HR responsibilities.  (Weaver Dep. at 126:19–127:9.)  On October 12, 2021, Weaver connected Mazzella with her husband, Keith Weaver, over email, writing "I was explaining to [Mazzella] the relationship between Genesis Global and Uncle Nearest and the HR function they were supposed to handle in its entirety.  We are trying to figure out how the ball got dropped that [Genesis Global] didn't obtain a signed acknowledgement [from Plaintiff] (or others prior to July) for the Employee Handbook."  (Email Thread 10/12/2021, Dkt. 50-14, at ECF 4.)  On November 8, 2021, Weaver received a "revised draft report" from Kroll.  (Pl.'s Counterstat. ¶ 109; Email to Weaver 11/8/2021, Dkt. 50-18, at ECF 2.)  Kroll's investigation did not substantiate that Harper had sexually harassed Plaintiff, and Weaver subsequently informed Plaintiff of Kroll's conclusion.[12]  (Pl.'s 56.1¶¶ 96–97.)  Weaver accepted the findings of the Kroll report in full, and Harper was never disciplined.  (Pl.'s Counterstat. ¶ 112.)

### G.    Plaintiff's Work After July 1, 2021

During the time Plaintiff reported to Weaver, Weaver was responsible for, *inter alia*, assessing Plaintiff's proposals for brand events.  (Pl.'s 56.1 ¶ 100.)  Weaver approved some of Plaintiff's proposals and denied others.  (*Id.* ¶ 102.)  Plaintiff contends that, prior to her sexual

---

[12] Defendants contend that after Plaintiff's internal complaint, Weaver reminded Harper of the company's prohibition against sexual harassment, which Plaintiff disputes to the extent that Harper could not have been "reminded of a policy he was not aware of" given that Harper testified he could not recall previously receiving an employee handbook.  (Pl.'s 56.1 ¶ 98; Harper Dep. at 79:19–25.)

harassment complaint and prior to reporting to Weaver, she never had a proposal denied. (*Id.*) When Weaver denied initial approval, however, she would remain open to hearing Plaintiff's business justification for further consideration. (*Id.* ¶¶ 104–05.) Weaver told Plaintiff "[a]s long as you present a solid case for sponsorship, and it makes sense, I'm happy to revisit." (*Id.* ¶ 104.) Regarding a "Broadway Actors" event that Plaintiff proposed on July 14, 2021, and Weaver ultimately denied, Weaver wrote to Plaintiff that she was "lean[ing] no as it seems as though it's not that organized," but allowed Plaintiff to "make a pitch for doing it." (*Id.* ¶¶ 105–06; Email Thread 7/14/2021, Dkt. 47-11, at ECF 3–4.) In September 2021, when Plaintiff proposed an event for notable black journalists, Weaver responded, "I'll review in greater detail and circle back. Generally speaking, however, we don't do events like this as the requests would be never-ending. The very few private dinners like this that we've done, the hosts have brought in the Uncle Nearest versus it being donated." (Pl.'s 56.1 ¶ 108; Email Thread 9/13/2021, Dkt. 47-10, at ECF 3–4.) Weaver nonetheless approved the event. (Pl.'s 56.1 ¶ 109.) Defendants contend Weaver also approved a block party promotional event suggested by Plaintiff, but Plaintiff claims this was not an event that required approval because Uncle Nearest had already invested the dollars. (*Id.* ¶ 111.)

During this time, Plaintiff was also separated from Market Manager Michielli. Plaintiff testified that when she was informed that she would be reporting to Weaver instead of Harper, Weaver also told her that she "was not to have any communication with Steve Michielli," because "[Weaver] can't have that liability." (Pl.'s Counterstat. ¶ 55; Menos Dep. at 359:5–361:7.) Plaintiff asked Weaver and Lucia Creed, the Director of Marketing, if she could work an event, "Whiskey X Brooklyn," on September 10, 2021, (*see* Creed Email Thread, Dkt. 47-33, at ECF 2), but she was not permitted to do so because "Michielli was assigned that event" and she was "separated from Mr. Michielli," (Menos Dep. at 371:3–11). Harper also worked the "Whiskey X

12

Brooklyn," event with Michielli. (*Id.* at 372:4–373:2; Pl.'s 56.1 ¶ 114.) Plaintiff wanted to continue to communicate with Michielli because it was "part of her job." (Pl.'s Counterstat. ¶ 56; Menos Dep. at 361:8–19.) Plaintiff testified that prior to July 1, 2021, she communicated with Michielli "regularly. If not every other day, then twice a week." (Menos Dep. at 517:7–13.) Plaintiff testified that being cut off from Michielli "made [her job] more frustrating." (*Id.* at 519:15–19.)

The parties dispute whether Plaintiff was cut off from company-wide emails after filing her internal complaint. (Pl.'s 56.1 ¶ 119.) Plaintiff testified that after filing her sexual harassment complaint, there was a "major difference" in the amount of communication between herself and the rest of the company—she previously "would get dozens of emails a day, and then it slowed to sometimes none." (Menos Dep. at 529:3–15.) She testified that she would find out about company updates "weeks later." (*Id.* at 528:21–529:2.) On October 29, 2021, in response to an email sent by Jerkens to Uncle Nearest employees, excluding Plaintiff, Weaver wrote to Jerkens "[y]ou can begin sending emails to her directly. I'd simply send a new one to yourself and bcc [Plaintiff] and then include her moving forward. Now, that the investigation is concluded, and we understand the path forward, we know the current reporting structure is here to stay. So, please include her." (Email Thread 10/28/2021, Dkt. 50-15, at ECF 2; Pl.'s 56.1 ¶ 119.)

## H.     Plaintiff's Bonus Eligibility

During her employment with Uncle Nearest, Plaintiff was eligible for bonus compensation based on certain metrics. (Pl.'s 56.1 ¶ 120.) Plaintiff was aware that she needed to submit documentation regarding her work during each applicable time period in order to receive her bonus. (*Id.* ¶ 121.) The "Full Time-Brand Steward Incentive Plan" signed by Plaintiff on October

2, 2020, provided for a maximum of $900 bonus per month.[13]  (Uncle Nearest Incentive Plan, Dkt. 50-19, at ECF 2.)  Plaintiff was paid a $900 bonus for July 2021 on August 6, 2021, and a $900 bonus for August 2021 on September 17, 2021.  (Pl.'s 56.1 ¶¶ 123–24.)  Plaintiff did not submit the proper paperwork for September 2021.  (*Id.* ¶ 125.)  On August 26, 2021, Weaver sent a text message to the "VP Team" with a request to "share this note with your team members" regarding "major inventory issues," and writing, "[b]ecause I know if any goals are missed this quarter, it is because of this . . . NOT you . . . everyone's max bonus will be paid out for Q3, no matter what." (Weaver Text 8/26/2021, Dkt. 50-16, at ECF 2–3.)  For the third quarter of 2021, i.e., July to September 2021, all Brand Stewards who submitted the required documentation received bonus compensation, whether their metrics were achieved or not.  (Pl.'s 56.1 ¶ 126.)  However, no bonus compensation was paid to Brand Stewards who did not submit the required documentation in the third quarter of 2021.  (*Id.* ¶ 127.)

Plaintiff resigned from Uncle Nearest on December 3, 2021, effective December 10, 2021. (*Id.* ¶ 128.)

## II.    Relevant Procedural History

On October 26, 2021, Plaintiff filed a Charge of Discrimination against Defendants with the U.S. Equal Employment Opportunity Commission ("EEOC"), alleging sexual harassment, hostile work environment, and retaliation.  (Am. Compl. ¶¶ 14–15.)  Plaintiff was issued a Notice of Right to Sue.  (*Id.* ¶ 16.)  Plaintiff filed her initial lawsuit in this district on January 21, 2022, which was voluntarily dismissed without prejudice.  (*Id.* ¶ 18.)  Plaintiff then filed an action in New York State Supreme Court, Kings County on February 17, 2022, (Summ. & Compl., Dkt. 1-

---

[13]  The $900 total is based on the Court's calculation of the incentives outlined in the bonus plan.  (*See* Uncle Nearest Incentive Plan, Dkt. 50-9, at ECF 2.)  Plaintiff testified in her deposition that the maximum bonus amount for any given month was $1,000.  (Menos Dep. at 520:12–18.)

1), which Defendants timely removed to this Court on March 16, 2022, (Notice of Removal, Dkt. 1).  Defendants answered Plaintiff's Complaint on March 21, 2022, (Answer, Dkt. 6), and the parties proceeded with discovery.

On April 4, 2023, Plaintiff moved to amend her Complaint to add claims under Title VII of the Civil Rights Act of 1964 and the NYSHRL, along with new facts purportedly obtained after deposing Weaver.  (Mot. to Am. Compl., Dkt. 21, at ECF 1–2.)  Over Defendants' objection, Plaintiff was ultimately permitted to amend her complaint to add her NYSHRL claims and additional factual allegations.  (R&R, Dkt. 28; 6/25/2023 Dkt. Order.)  Plaintiff filed her Amended Complaint on October 13, 2023.  (Am. Compl.)  The Amended Complaint alleges the following causes of action: (1) sex discrimination in violation of NYCHRL (hostile work environment) against Defendant Uncle Nearest; (2) retaliation in violation of NYCHRL against Defendants Uncle Nearest and Weaver; (3) violations of NYLL §§ 191(1)(c) and 191-b (relating to denial of bonuses and commission) against Defendant Uncle Nearest; (4) sex discrimination and harassment in violation of NYSHRL (hostile work environment) against Defendant Uncle Nearest; and (5) retaliation in violation of NYSHRL against Defendants Uncle Nearest and Weaver.  (*Id.* ¶¶ 96–134.)

On July 15, 2024, Defendants' motion for summary judgment was fully briefed, and is now ripe for decision.  (*See* Dkts. 47–50.)

## LEGAL STANDARD

To obtain summary judgment, the moving party must establish that "there is no genuine dispute as to any material fact," and that the moving party is therefore "entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a).  In making this determination, the Court must view all facts "in the light most favorable" to the non-moving party.  *Holcomb v. Iona Coll.*, 521 F.3d 130, 132

(2d Cir. 2008). "Where the undisputed facts reveal that there is an absence of sufficient proof as to one essential element of a claim, any factual disputes with respect to other elements become immaterial and cannot defeat a motion for summary judgment." *Chandok v. Klessig*, 632 F.3d 803, 812 (2d Cir. 2011) (citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 322–23 (1986)).

"The moving party bears the burden of showing that he or she is entitled to summary judgment." *Ramirez v. Rifkin*, 568 F. Supp. 2d 262, 267 (E.D.N.Y. 2008). Where the defendant is the moving party, there is "no express or implied requirement" that the defendant "negat[e] the [plaintiff's] claim" with evidence of its own, as long as it "point[s] out to the district court . . . that there is an absence of evidence to support the [plaintiff's] case." *Celotex Corp.*, 477 U.S. at 323, 325 (emphasis omitted). Once a defendant has met this burden, the plaintiff must "do[ ] more than simply rely on the contrary allegation[s] in her complaint," *Adickes*, 398 U.S. at 160, and "go beyond the pleadings" to "designate specific facts showing that there is a genuine issue for trial," *Celotex Corp.*, 477 U.S. at 324 (quotation marks omitted); *see also D'Amico v. City of New York*, 132 F.3d 145, 149 (2d Cir. 1998) (explaining that a non-moving party "may not rely on mere conclusory allegations nor speculation, but instead must offer some hard evidence" to defeat summary judgment).

## DISCUSSION

## I.    Plaintiff's Sexual Harassment Claims

Plaintiff brings NYSHRL and NYCHRL sex discrimination claims for hostile work environment due to sexual harassment against Defendant Uncle Nearest.[14]  Defendants seek

---

[14] Plaintiff's opposition brief appears to suggest, though not clearly, that Plaintiff also asserts her discrimination/harassment claims against Weaver in her individual capacity under a theory of "aiding and abetting" the harassment. (Pl.'s Mem. Opp. Mot. Summ. J., Dkt. 50 ("Pl.'s Br."), at 21–22.) The Court disregards Plaintiff's argument to this effect as Plaintiff does not plead these claims against Weaver in her individual capacity in Counts One and Four of the Amended

summary judgment as to these claims arguing that (1) Plaintiff's allegations do not rise to the level of harassment as a matter of law, and (2) liability for Harper's conduct cannot be imputed to Uncle Nearest.  (*See* Defs.' Mem. Supp. Mot. Summ. J., Dkt. 47-2 ("Defs.' Br."), at 8–14.)  Because there are genuine questions of material fact as to Plaintiff's sexual harassment claims and Uncle Nearest's liability, Defendants' motion for summary judgment on Plaintiff's sexual harassment claims is denied.

### A.   Sexual Harassment Under the NYCHRL and NYSHRL

#### 1.   NYCHRL

The NYCHRL provides that it is unlawful for "an employer or an employee or agent thereof . . . because of the actual or perceived . . . gender . . . of any person . . . [t]o discriminate against such person in compensation or in terms, conditions or privileges of employment." N.Y.C. Admin. Code. § 8–107(1)(a).  The NYCHRL has a "uniquely broad and remedial purpose," and its provisions "shall be construed liberally." *Id.* § 8-130; *see Mihalik v. Credit Agricole Cheuvreux N. Am., Inc.*, 715 F.3d 102, 114 (2d Cir. 2013).  For a hostile work environment claim under the NYCHRL to survive summary judgment, Plaintiff need only show "the existence of unwanted gender-based conduct." *Bermudez v. City of New York*, 783 F. Supp. 2d 560, 579 (S.D.N.Y. 2011).  However, "petty, slight, or trivial inconveniences are not actionable." *Id.* (cleaned up).

The NYCHRL does not set forth "separate standards for 'discrimination' and 'harassment' claims; rather, 'there is only the provision of the law that proscribes imposing different terms, conditions and privileges of employment based, inter alia, on gender.'" *McHenry v. Fox News Network, LLC*, 510 F. Supp. 3d 51, 66 n.5 (S.D.N.Y. 2020) (quoting *Clarke v. InterContinental*

---

Complaint, referring only to "Defendant Uncle Nearest."  (Am. Compl. ¶¶ 96–103, 118–28); *Mitchell v. County of Nassau*, 786 F. Supp. 2d 545, 564 (E.D.N.Y. 2011) ("[I]t is inappropriate to raise new claims for the first time in submissions in opposition to a summary judgment motion.").

*Hotels Grp., PLC*, No. 12-CV-2671 (JPO), 2013 WL 2358596, at *11 (S.D.N.Y. May 30, 2013)). "So long as the mistreatment could be considered either sexual harassment *or* gender-based discrimination, it would fall under the NYCHRL's protection." *Singh v. Meetup LLC*, No. 23-CV-9502 (JPO), 2024 WL 3904799, at *4 (S.D.N.Y. Aug. 22, 2024) (emphasis in original), *recon. denied*, 2024 WL 4635482 (S.D.N.Y. Oct. 31, 2024).[15]

      2.    NYSHRL

Prior to its amendment in 2019, the NYSHRL was interpreted to "impose a higher standard of liability than the NYCHRL, more closely akin to Title VII," and "plaintiffs were required to allege 'severe or pervasive' conduct" to sustain a hostile work environment claim. *Singh*, 2024 WL 3904799, at *7. However, in 2019, the NYSHRL was amended to "eliminate the requirement that harassing or discriminatory conduct be severe or pervasive to be actionable." *Maiurano v. Cantor Fitzgerald Sec.*, No. 19-CV-10042 (KPF), 2021 WL 76410, at *3, n.2 (S.D.N.Y. Jan. 8, 2021); *see* N.Y. Exec. Law § 296(1)(h). Since then, courts have interpreted the NYSHRL as applying a "more lenient standard of liability closer to the NYCHRL," *Singh*, 2024 WL 3904799, at *7 (quotation marks omitted), that prohibits harassing conduct that results in "inferior terms, conditions, or privileges of employment." *Maiurano*, 2021 WL 76410, at *3, n.2 (quoting N.Y. Exec. Law § 296(1)(h)).

---

[15] Though the NYCHRL does not define "sexual harassment," pursuant to N.Y.C. Admin. Code § 8-132(a)(1)(b), the New York City Commission on Human Rights provides online resources with "[s]pecific descriptions and examples of activities which may be sexual harassment." *See Singh*, 2024 WL 3904799, at *5. The Commission's website defines sexual harassment as "unwelcome verbal or physical behavior based on a person's gender [and] can include unwanted touching; offensive and suggestive gestures or comments; asking about a person's sex life or making sexualized remarks about a person's appearance; sexualizing the work environment with imagery or other items; or telling sexual jokes." *Id.* (citing *Stop Sexual Harassment Act, NYC Hum. Rts.*, https://www.nyc.gov/site/cchr/law/sexual-harassment-training-main.page (last visited Mar. 3, 2025)).

3.    The Alleged Conduct Constitutes Harassment under the NYCHRL and NYSHRL

Plaintiff's sexual harassment claims rely predominantly on three sets of allegations: (1) Harper touching Plaintiff's buttocks on two occasions in June 2021; (2) Harper's inquiries into Plaintiff's personal life; and (3) Harper's late-night text messages.  (Pl.'s Br., at 3–4, 11–12.) Defendants assert that these claims must be dismissed, under both the NYSHRL and NYCHRL, because Plaintiff's allegations, whether taken individually or together, do not rise above the level of petty slights and trivial inconveniences.  (Defs.' Br., at 8–13.)  The Court disagrees.

With respect to the alleged touching incidents, Plaintiff testified at her deposition that at a company retreat on June 15, 2021, Harper patted her upper back, slid his hand down her back, and "let his hand rest on [her] buttocks momentarily."  (Menos Dep. at 238:10–25.)  Plaintiff described the touching as "groping" or "grabbing."  (*Id.* at 237:2–18, 241:4–7.)  Though she could not recall precisely how long Harper touched her buttocks, she described it as "too many seconds" and that it "felt like forever."  (*Id.* at 239:2–18.)  Plaintiff testified that this happened again on June 19, 2021, when Harper "patted [her] upper back and slid his hand down [her] buttocks."  (*Id.* at 285:12–20.)  Plaintiff described the touching as a "grab" but "not [a] squeeze," and testified that it lasted somewhere between a few seconds and a minute.  (*Id.* at 286:8–15, 288:15–289:6.)  These allegations are also memorialized in the sexual harassment and hostile work environment complaint that Plaintiff sent to Uncle Nearest leadership, including Weaver, on July 1, 2021.  (*See* Notice of Sexual Harassment, Dkt. 50-8, at 1–2.)  Harper denied that these incidents occurred in his deposition testimony.  (Harper Dep. at 65:2–8; 114:11–25.)

The Second Circuit has stated that "[d]irect contact with an intimate body part constitutes one of the most severe forms of sexual harassment."  *Redd v. N.Y. Div. of Parole*, 678 F.3d 166,

180 (2d Cir. 2012).[16]  As Plaintiff notes, there have been several cases in this Circuit in which a hostile work environment claim was established by a single instance of unwanted contact with an intimate body part.  (Pl.'s Br., at 4–5); *see, e.g.*, *Reid v. Ingerman Smith LLP*, 876 F. Supp. 2d 176, 185 (E.D.N.Y. 2012) (holding that an allegation of a single instance of a supervisor grabbing an employee's breast was sufficient to state a claim for hostile work environment); *Dillon v. Ned Mgmt., Inc.*, 85 F. Supp. 3d 639, 663 (E.D.N.Y. 2015) (finding that where employee's supervisor grabbed her buttock, "[t]his single incident of contact is sufficient to constitute the creation of a hostile work environment"); *Stathos v. Gala Res., LLC*, No. 06-CV-13138 (RLC), 2010 WL 2024967, at *5 (S.D.N.Y. May 21, 2010) (holding that plaintiff's allegation that a supervisor "intentionally groped her buttocks can alone defeat defendants' motion for summary judgment"). Defendants attempt to distinguish these cases by claiming that they consisted of more overtly sexual and demeaning conduct than the allegations at issue here because those cases included allegations of other sexually explicit advances and comments.  (Defs.' Reply, at 2–3.)  But, as explained above, the law in this Circuit is clear that even a single incident involving unwanted contact with an intimate body part can defeat summary judgment.

Defendants also unconvincingly attempt to liken Plaintiff's allegations of unwanted physical contact to cases in which claims of harassment were dismissed as simply petty slights or trivial inconveniences.  (Defs.' Br., at 12–13); *see, e.g.*, *Russo v. New York Presbyterian Hosp.*, 972 F. Supp. 2d 429, 451 (E.D.N.Y. 2013) (dismissing hostile work environment claims where

---

[16] Defendants claim that *Redd* stands for the proposition that a "pinch on the buttocks" alone is not sufficient to sustain a harassment claim.  (Defs.' Reply, at 3 n.3.)  This is incorrect. The Second Circuit explained in *Redd* that a single "pinch of the buttocks—*may be* considered insufficiently abusive to be described as '*severe*'" depending on the circumstances.  *Redd*, 678 F.3d at 177 (emphasis added).  Notably, the court in *Redd* was evaluating a hostile work environment claim under Title VII, which requires a showing that the conduct was "severe or pervasive" unlike the NYCHRL or the NYSHRL post-2019. *Singh*, 2024 WL 3904799, at *7.

plaintiff alleged a supervisor "brushed against Plaintiff's body as he walked past her" and "trapped Plaintiff directly in front of his crotch by refusing to lift his leg up as she tried to walk past"); *Lucas v. S. Nassau Cmtys. Hosp.*, 54 F. Supp. 2d 141, 147 (E.D.N.Y. 1998) (finding plaintiff failed to establish a prima facie case of hostile workplace discrimination where supervisor allegedly "brushed up against plaintiff" several times and "touched plaintiff's back or shoulder" several times); *Dayes v. Pace Univ.*, No. 98-CV-3675 (WHP), 2000 WL 307382, at *3–5 (S.D.N.Y. Mar. 24, 2000), *aff'd*, 2 F. App'x 204 (2d Cir. 2001) (summary order) (finding allegations that employee's supervisor made several sexual and vulgar comments and touched plaintiff's back were not sufficiently "severe or pervasive" to survive summary judgment). None of these cases are analogous here. First, Defendants' reliance on cases evaluating whether conduct is "severe" or "pervasive" is "inapposite because the federal 'severe or pervasive' standard of liability does not apply to NYCHRL or . . . post-amendment NYSHRL claims." *Mitura v. Finco Servs., Inc.*, 712 F. Supp. 3d 442, 452 (S.D.N.Y. 2024), *recon. denied*, 2024 WL 1160643 (S.D.N.Y. Mar. 18, 2024). Further, Plaintiff is not alleging that Harper incidentally brushed past her or that he only touched her back or shoulder; Plaintiff is alleging that Harper, on two separate occasions, deliberately slid his hand down her back and grabbed her buttocks. (Pl.'s 56.1 ¶¶ 37–38, 55–57.) "Intentionally grabbing, squeezing, or otherwise feeling an intimate part of another's body is vastly different than brushing against it—whether on purpose or by accident." *Reid*, 876 F. Supp. at 185. Whether the alleged touching incidents actually occurred is a genuine issue of material fact for a jury to determine.

In addition to the alleged touching incidents, Plaintiff asserts that Harper's alleged inquiries into her personal life and several late-night text messages further support her hostile work environment claims. (Pl.'s Br., at 11–12.) Plaintiff testified that between January and May 2021,

Harper asked about her "loved one" or "significant other" repeatedly in a "flirtatious tone" that she believed to be "too personal," even though she could only remember a few specific instances. (Pl.'s Counterstat. ¶¶ 14–15, Menos Dep. at 206:2–16.)  On June 24, 2021, several days after the alleged touching incidents, Harper texted Plaintiff about a promotional event she had worked, following up several times late at night when Plaintiff did not respond.  (Pl.'s 56.1 ¶¶ 72–80).  The Court agrees with Defendants that, based on the record, these allegations *on their own* would not support a claim for sexual harassment and gender-based hostile work environment.  However, courts evaluate these claims based on the "totality of the circumstances" and "consider the factors cumulatively to obtain a realistic view of the work environment."  *Stathatos*, 2010 WL 2024967, at *5.  Here, based on the combination of Plaintiff's allegations of nonconsensual, inappropriate touching of an intimate body part and her allegations of inappropriate personal questions and excessive late-night texting, there is sufficient evidence to support a claim for a hostile work environment.[17]

"[H]ostile work environment claims present 'mixed question[s] of law and fact' that are 'especially well-suited for jury determination.'"  *Stathatos*, 2010 WL 2024967, at *5 (quoting *Schiano v. Quality Payroll Sys., Inc.*, 445 F.3d 597, 605 (2d Cir.2006)).  Here, if a jury were to credit Plaintiff's testimony, it could reasonably conclude that Harper's conduct constituted more than petty slights or inconveniences and amounted to "unwanted gender-based conduct" under the NYCHRL, which resulted in inferior terms, conditions, or privileges of employment under the NYSHRL.  *Bermudez*, 783 F. Supp. 2d at 579; *see Mihalik*, 715 F.3d at 114 ("Under New York

---

[17] To the extent Defendants argue that Plaintiff cannot show Harper's alleged harassing conduct was based on sex or gender, "[w]hen, as is often the case in sexual harassment claims, fact questions such as state of mind or intent are at issue, summary judgment should be used sparingly." *Redd*, 678 F.3d at 178 (cleaned up).  Given the nature of the harassing conduct that Plaintiff alleges, a jury could certainly find that it was based on Plaintiff's sex and gender.

law, a defendant is entitled to summary judgment based on the conduct's triviality only if a reasonable jury could not interpret the alleged [conduct] as anything more than petty slights or trivial inconveniences."). Thus, the Court finds that Plaintiff's sexual harassment claims under the NYSHRL and NYCHRL against Defendant Uncle Nearest present triable issues of fact.

### B.    Uncle Nearest's Liability

Defendants claim that Uncle Nearest cannot be held liable for Harper's alleged harassing conduct under the NYCHRL and NYSHRL. (Defs.' Br., 13–14.) With respect to Plaintiff's NYCHRL claim, this is plainly incorrect.

Under the NYCHRL, an employer "shall be liable for an unlawful discriminatory practice based upon the conduct of an employee or agent" where:

> (1) The employee or agent exercised managerial or supervisory responsibility; or (2) The employer knew of the employee's or agent's discriminatory conduct, and acquiesced in such conduct or failed to take immediate and appropriate corrective action; an employer shall be deemed to have knowledge of an employee's or agent's discriminatory conduct where that conduct was known by another employee or agent who exercised managerial or supervisory responsibility; or (3) The employer should have known of the employee's or agent's discriminatory conduct and failed to exercise reasonable diligence to prevent such discriminatory conduct.

N.Y.C. Admin. Code. § 8–107(13)(b). The New York Court of Appeals has interpreted this subsection to impose strict liability on employers for harassment and discrimination carried out by its managers and supervisors, finding that whether "the employer encourages, condones or approves the unlawful discriminatory acts . . . are not factors to be considered so long as the offending employee exercised managerial or supervisory control." *Zakrzewska v. New Sch.*, 928 N.E.2d 1035, 1040 (N.Y. 2010). Here, it is undisputed that Harper, as Vice President of Sales, East, was Plaintiff's supervisor and that Plaintiff reported directly to Harper from the start of her employment in October 2020 until July 2021. (Pl.'s 56.1 ¶¶ 8, 86–87.) Thus, the NYCHRL

imposes liability on Uncle Nearest for any harassing conduct that Harper engaged in as Plaintiff's supervisor.

Under the NYSHRL, however, an employer cannot be held liable "for an employee's discriminatory act 'unless the employer became a party to it by encouraging, condoning, or approving it.'" *Doe v. Bloomberg, L.P.*, 167 N.E.3d 454, 455 (N.Y. 2021) (citations omitted). Defendants argue that no reasonable juror could find that Uncle Nearest became a party to the alleged sexual harassment because Defendants took immediate action upon learning of the allegations on July 1, 2021. (Defs.' Br., at 13–14.) Plaintiff asserts several theories of employer liability, claiming that Uncle Nearest encouraged, condoned, and approved of Harper's conduct. (Pl.'s Br., at 7–11.) Of these, the most plausible theory based on the evidence is that Uncle Nearest *condoned* the harassment.[18]

"Condonation, which may sufficiently implicate an employer in the discriminatory acts of its employee to constitute a basis for employer liability under the [New York State] Human Rights Law, contemplates a knowing, after-the-fact forgiveness or acceptance of an offense." *E.E.O.C. v. Suffolk Laundry Servs., Inc.*, 48 F. Supp. 3d 497, 521–22 (E.D.N.Y. 2014) (citing *State Div. of Hum. Rts. on Complaint of Greene v. St. Elizabeth's Hosp.*, 487 N.E.2d 268, 269 (N.Y. 1985)). "Alternatively, an employer's calculated inaction in response to discriminatory conduct, may as readily as affirmative conduct, indicate condonation." *Id.* at 522 (cleaned up) (citation omitted).

---

[18] Plaintiff also points to evidence that Uncle Nearest failed to implement anti-sexual harassment training and training on reporting mechanisms prior to Plaintiff's allegations. (Pl.'s Br., at 8.) While this may ultimately be relevant to Plaintiff's claims, the Court is not aware of— nor does Plaintiff cite—any case law establishing that an employer's failure to implement proper anti-sexual harassment training proves that an employer *encouraged* the alleged harassment for the purposes of NYSHRL employer liability.

Although the parties largely agree on what actions Defendants took in response to Plaintiff's internal harassment complaint, they characterize Defendants' actions, and the purpose behind them, differently.  Defendants argue that the Kroll investigation is proof that Uncle Nearest *did not* condone Harper's conduct, and that they "changed Plaintiff's reporting line to ensure her comfort in the workplace," (Defs.' Br., at 14; *see also* Defs.' Reply, at 6), whereas Plaintiff argues that Defendants' investigation was biased and their actions, in effect, condoned Harper's conduct, (Pl.'s Br., at 8–10).

Plaintiff lodged her internal complaint regarding Harper's alleged harassment with Uncle Nearest on July 1, 2021, to which Weaver responded the following day by writing, in part:

> [I]f this complaint had been brought to any of the women leaders in my company (which is the entire leadership), we would have certainly addressed this concern immediately and provided remedy.  By contacting an attorney first, you denied any of our female leaders the ability to assist you and to figure out how to make your very short time in our company thus far better.

(Weaver Email to Pl. 7/2/2021, Dkt. 50-9, at ECF 2.)  Weaver quickly hired Kroll to investigate the allegations, and Weaver replaced Harper as Plaintiff's direct supervisor.  (Pl.'s 56.1 ¶¶ 86, 89.) In an email to Plaintiff and her then counsel on July 30, 2021, informing them of the internal investigation, Weaver stated that she had spent many hours with Harper's direct supervisees as part of her "CEO Thank You Tour" and that "their feedback regarding [Harper's] leadership was 100-percent positive," which she shared with the Kroll investigator to "go into the file on this case."  (Weaver Email 7/30/2021, Dkt. 50-12, at ECF 2.)  Weaver and Harper had direct access to John Mazzella, the Kroll investigator, during the course of the investigation, while Plaintiff did not, and Weaver got to review a draft report of Kroll's investigative report, while Plaintiff did not. (Pl.'s Counterstat. ¶¶ 94–95, 98; Menos Decl. ¶¶ 7–8; Harper Email to Mazzella 9/21/2021, Dkt.

50-13 at ECF 2.)  The investigation did not result in a finding of misconduct by Harper, and he was never disciplined.  (Pl.'s 56.1 ¶¶ 96–97, Pl.'s Counterstat. ¶ 112.)

It is admittedly a close call whether this evidence is sufficient for a jury to find that Uncle Nearest became a party to the harassment.  On the one hand, "courts have found that an employer condones harassment (and thus becomes a party to it) only where the employer either takes no action in response to accusations or where any action taken is alleged to have been in bad faith." *Payne v. JetBlue Airways Corp.*, No. 20-CV-0101 (NRM) (PK), 2024 WL 3360381, at *12 (E.D.N.Y. July 9, 2024).  A genuine, even if insufficient, disciplinary measure can be enough to shield an employer from imputed liability.  *See M.H. v. Starbucks Coffee Co.*, No. 22-CV-10507 (GHW), 2023 WL 5211023, at *5 (S.D.N.Y. Aug. 13, 2023) (granting motion to dismiss NYSHRL claim against employer where Plaintiff did not allege "anything other than a genuine (if insufficient) disciplinary measure").  There is certainly no dispute here that Uncle Nearest acted in response to Plaintiff's complaint by hiring a third-party investigator and changing Plaintiff's supervisor from Harper to Weaver—actions that a jury could find were designed to curtail the alleged harassment and enable Plaintiff to continue working at the company free of harassment.

On the other hand, a reasonable jury could find, as Plaintiff contends, that the Kroll investigation was partial or ineffective because of Weaver's direct involvement in it, leading to a result that "was a foregone conclusion."  *See Hill v. Child.'s Vill.*, 196 F. Supp. 2d 389, 401 (S.D.N.Y. 2002) (denying summary judgment on NYSHRL claim where Plaintiff set forth evidence that employer's investigation was "so ineffective that it was meaningless" and the "result was a foregone conclusion").  The fact that the investigation found no wrongdoing by Harper could buttress such a conclusion, especially if the jury credits Plaintiff's testimony about the alleged harassment.  Thus, the jury could find that Uncle Nearest's response to Plaintiff's harassment

complaint was carried out in bad faith and that Uncle Nearest condoned and is thus liable for Harper's alleged sexual harassment of Plaintiff.

Accordingly, the Court finds that Plaintiff's NYSHRL claim against Uncle Nearest should proceed. Though, as noted, the evidence that the company condoned the harassment is not particularly strong, the Court is persuaded that where, as here, other claims are going forward based on the same evidence, the better course is not to dismiss the challenged claim. *See Thibodeaux v. Travco Ins. Co.*, No. 13-CV-5599 (ERK) (VVP), 2014 WL 354656, at *2 (E.D.N.Y. Jan. 31, 2014) ("If one of a number of integrally related causes of action have to be tried, it makes little sense to grant a motion to dismiss as to one or more of them, as it may prove necessary to hold yet another trial in the event that it is determined on appeal that the motion to dismiss was improperly granted." (citations omitted)); *Bacchus v. N.Y.C. Dep't of Educ.*, 137 F. Supp. 3d 214, 241 (E.D.N.Y. 2015) (denying motion for summary judgment on challenged claims due in part to the existence of other claims that were going forward based on the same evidence).

*    *    *

Defendants' motion for summary judgment on Plaintiff's NYCHRL and NYSHRL hostile work environment claims due to sexual harassment against Uncle Nearest is therefore denied.

## II.    Plaintiff's Retaliation Claims

Plaintiff brings NYCHRL and NYSHRL retaliation claims against Uncle Nearest and against Weaver in her individual capacity. Defendants contend that Plaintiff's claims under both statutes fail because Plaintiff has not established an "adverse action" to sustain a *prima facie* case of retaliation, and that Plaintiff has failed to show that Defendants' non-retaliatory reasons were pretextual. (Defs.' Br. at 15–21.) For the reasons explained below, the Court finds that Defendants are not entitled to summary judgment on Plaintiff's retaliation claims.

As an initial matter, the Court notes that Defendants fail to sufficiently distinguish between the elements of NYSHRL, NYCHRL, and Title VII retaliation claims in their briefing, and improperly apply the Title VII standard for retaliation to Plaintiff's NYCHRL claim. (*See id.*) Further, neither party acknowledges or addresses the 2019 amendment to the NYSHRL. (*Id.*; Pl.'s Br., at 18–21.)

**A.      The Court addresses Plaintiff's NYCHRL and NYSHRL claims, and the relevant standards, separately.**

1.      <u>NYCHRL Retaliation</u>

The NYCHRL prohibits employers from "retaliat[ing] or discriminat[ing] in any manner against any person because such person has . . . opposed any practice forbidden under this chapter." N.Y.C. Admin. Code § 8–107(7). To establish a retaliation claim under the NYCHRL, a plaintiff must show that:

> (1) he or she engaged in a protected activity as that term is defined under the NYCHRL, (2) his or her employer was aware that he or she participated in such activity, (3) his or her employer engaged in conduct which was reasonably likely to deter a person from engaging in that protected activity, and (4) there is a causal connection between the protected activity and the alleged retaliatory conduct.

*Milord-Francois v. N.Y. State Off. of Medicaid Inspector Gen.*, 635 F. Supp. 3d 308, 330 (S.D.N.Y. 2022). In addition to not requiring a showing of "materially adverse employment action," a NYCHRL retaliation claim differs from a retaliation claim under federal law because it does not require but-for causation. *Edelman v. NYU Langone Health Sys.*, 708 F. Supp. 3d 409, 436 (S.D.N.Y. 2023). "Rather, causation [for a NYCHRL retaliation claim] is met so long as the action was motivated 'at least in part' by a retaliatory motive," *id.*, which means that "[s]ummary judgment is appropriate only if the plaintiff cannot show that retaliation played *any* part in the employer's decision." *Mihalik*, 715 F.3d at 116 (emphasis added); *see Milord-Francois*, 635 F. Supp 3d at 330 ("Summary judgment dismissing a claim under the NYCHRL should be granted

only if no jury could find [the] defendant liable under any of the evidentiary routes—*McDonnell Douglas*, mixed motive, direct evidence, or some combination thereof." (collecting cases)).

Defendants argue that Plaintiff has not set forth an "adverse action" to sustain her retaliation claims. With respect to Plaintiff's NYCHRL claim, that argument is clearly misplaced, because, as discussed above, for that claim, Plaintiff need only show "conduct which was reasonably likely to deter a person from engaging in protected activity." *Id.* Construing the facts in the light most favorable to Plaintiff, the Court finds that Plaintiff has done so.[19] Plaintiff sets forth several examples of "deterrence," including Weaver's emails to Plaintiff following her complaint, the allegedly biased and bad faith investigation, and Weaver's denial of Plaintiff's proposal for the Broadway Actors' event.[20] (Pl.'s Br., at 14, 16–17.) Particularly compelling is Plaintiff's assertion that following her complaint of sexual harassment, she was isolated from the rest of the company, and specifically, from her co-worker Steve Michielli. (*Id.* at 14–16.) Plaintiff testified that prior to July 1, 2021, she communicated with Michielli "regularly. If not every other day, then twice a week." (Menos Dep. at 517:7–13.) Plaintiff testified that "it [was] a part of [her]

---

[19] However, to the extent Plaintiff argues constructive discharge as evidence of retaliation under either statute, the Court agrees with Defendants that Plaintiff is precluded from raising this argument because Plaintiff's counsel represented to Defendants and this Court at the pre-motion conference that they would not be asserting constructive discharge. (*See* Defs.' Reply, at 6–7; PMC Tr., Dkt 48-2, at 25:19–26:4.) Further, the Court does not consider Plaintiff's argument that she was denied her full bonus for the third quarter of 2021 as evidence of retaliation for the reasons set forth below. *See infra* Section III.

[20] Plaintiff also argues that Harper touching her buttocks a second time is another instance of retaliation due to Plaintiff's previous request that he "respect her space" after the first incident. (Pl.'s Br., at 14.) Some courts in this Circuit have held that rejecting a supervisor's advances constitutes "protected activity" to establish retaliation claims. *See Antoine v. Brooklyn Maids 26, Inc.*, 489 F. Supp. 3d 68, 85–86 (E.D.N.Y. 2020) (noting that courts in the Second Circuit "diverge somewhat as to whether rejecting a harasser's sexual advances constitutes protected activity," and finding that it does). Even so, Plaintiff sets forth no evidence to show that the second touching incident was motivated in any part by retaliation (versus an intent to continue the harassing conduct).

job to communicate" with Michielli, and that they "worked on the market together" because he "worked closely with the distributing partners, distributors." (*Id.* at 361:8–12, 366:19–22.) But following her complaint of sexual harassment, Weaver told Plaintiff that she "was not to have any communication with Steve Michielli," because "[Weaver] can't have that liability." (Pl.'s Counterstat. ¶ 55; Menos Dep. at 359:5–361:7.) Plaintiff testified that being cut off from Michielli "made [her job] more frustrating." (*Id.* at 519:15–19.) She further contends that she was prevented from attending the "Whiskey X Brooklyn" event because "Michielli was assigned that event" and she was "separated from Mr. Michielli." (*Id.* at 371:3–11.)[21]

In addition to the isolation from Michielli, Plaintiff testified that after filing her sexual harassment complaint, there was a "major difference" in the amount of communication between herself and the rest of the company: she previously "would get dozens of emails a day, and then it slowed to sometimes none." (*Id.* at 529:3–15.) Plaintiff testified that she would find out about company updates "weeks later." (*Id.* at 528:21–529:2.) The parties dispute whether Plaintiff was in fact cut off from company-wide communication. Defendants provide several examples of emails that Plaintiff received during the relevant time period, (Jerkens Decl., Dkt. 47-16, ¶¶ 14–17 (attesting to Plaintiff's inclusion on company emails dated July 26, 2021; October 4, 2021; October 5, 2021; and October 12, 2021 (citing Dkts. 47-18–47-21)), while Plaintiff, in addition to her deposition testimony, relies on an email from Weaver that seems to indicate that Plaintiff was not receiving all communication during the pendency of the Kroll investigation, (Email Thread 10/28/2021, Dkt. 50-15, at ECF 2; Pl.'s 56.1 ¶ 119 (describing October 29, 2021 email in which Weaver instructed Jerkens: "You can begin sending emails to [Plaintiff] directly. . . . Now, that the

---

[21] It should be noted, however, that Harper was also in attendance, (Pl.'s 56.1 ¶ 114), which provides another reason for the company not to have Plaintiff attend the event.

investigation is concluded, and we understand the path forward, we know the current reporting structure is here to stay. So, please include her.")).

Ultimately, whether the retaliatory conduct that Plaintiff alleges was likely to deter a person from engaging in protected activity and thus supports a retaliation claim is best left for the jury to decide. *See, e.g.*, *Schanfield v. Sojitz Corp. of Am.*, 663 F. Supp. 2d 305, 342–43 (S.D.N.Y. 2009) (noting it is illegal under the NYCHRL for an employer to retaliate in "any manner," and that a jury should determine whether exclusion from meetings, failure to provide language translations, and increased supervision is sufficient to support a retaliation claim); *Xanthakos v. City Univ. of N. Y.*, No. 17-CV-9829 (VEC), 2020 WL 5026930, at *7 (S.D.N.Y. Aug. 24, 2020) (finding that diminished responsibilities, deprivation of information, and exclusion from or being ignored at meetings and office parties is sufficient to constitute adverse action for retaliation claims).

The Court is also persuaded that Plaintiff has set forth sufficient evidence from which a jury could infer retaliatory intent, particularly given that "causation is met so long as the action was motivated 'at least in part' by a retaliatory motive." *Edelman*, 708 F. Supp. 3d at 436. While Defendants make several arguments regarding the *basis for* and *impact of* Plaintiff's alleged isolation, most of which are factual disputes, they do not set forth a non-retaliatory reason beyond "Michielli would have been required to interact with Harper (as Harper was his direct supervisor)." (Defs.' Br. at 20.) The allegedly retaliatory conduct was certainly in close temporal proximity to Plaintiff's protected activity, and while that alone would not be sufficient, there is also evidence tending to support that Weaver was displeased with Plaintiff for lodging her internal complaint of sexual harassment and hostile work environment. The day after Plaintiff brought these allegations to Uncle Nearest, Weaver wrote to Plaintiff's lawyer that she has an "entire company who would one-by-one step onto the stand to fully dispute everything in your letter," that she finds "this all

incredibly odd," and that she was confident she and Uncle Nearest "will completely and entirely withstand your accusation."  (Weaver Resp. Not. Sexual Harassment, Dkt. 50-3, at ECF 2.)  On the same day, Weaver told Plaintiff that by sending her allegations to Uncle Nearest through her lawyer she "denied any of [their] female leaders the ability to assist [Plaintiff] and to figure out how to make [her] very short time in our company thus far better."  (Weaver Email to Pl. 7/2/2021, Dkt. 50-9, at ECF 2.)  Here, the Court finds that there is sufficient evidence in the record for a reasonable jury to find that Defendants were "motivated 'at least in part' by a retaliatory motive." *Edelman*, 708 F. Supp. 3d at 436; *see Dillon v. Ned Mgmt., Inc.*, 85 F. Supp. 3d 639, 662 (E.D.N.Y. 2015) ("Assessing a retaliation claim should 'be made with a keen sense of workplace realities, of the fact that the "chilling effect" of particular conduct is context-dependent, and of the fact that a jury is generally best suited to evaluate the impact of retaliatory conduct." (citing *Williams v. N.Y.C. Hous. Auth.*, 872 N.Y.S.2d 27, 34 (N.Y. App. Div. 2009))).

Accordingly, summary judgment is denied with respect to Plaintiff's NYCHRL retaliation claim.  *See Mihalik*, 715 F.3d at 116 ("[S]ummary judgment is appropriate only if the plaintiff cannot show that retaliation played *any* part in the employer's decision[.]") (emphasis added).

## 2.    NYSHRL Retaliation

Retaliation claims under the NYSHRL have historically been analyzed under the same standard as Title VII retaliation claims pursuant to *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973). *See Zann Kwan v. Andalex Grp. LLC*, 737 F.3d 834, 843 (2d Cir. 2013).  Under *McDonnell Douglas*, "the plaintiff must establish a prima facie case of retaliation by showing 1) participation in a protected activity; 2) the defendant's knowledge of the protected activity; 3) an adverse employment action; and 4) a causal connection between the protected activity and the adverse employment action." *Id.* at 844.  "Once the plaintiff has established a prima facie showing of retaliation, the burden shifts to the employer to articulate some legitimate, non-retaliatory reason

for the employment action." *Id.* at 845. The plaintiff must then show that the "non-retaliatory reason is a mere pretext for retaliation." *Id.* Unlike the NYCHRL, there must be a material adverse action, and plaintiff must demonstrate that retaliation was a "but-for cause" of that adverse action. *Schaper v. Bronx Lebanon Hosp. Ctr.*, 408 F. Supp. 3d 379, 390 (S.D.N.Y. 2019); *Edelman*, 708 F. Supp. at 436 (noting that, unlike Title VII and NYSHRL claims, the NYCHRL does not require materially adverse employment action or but-for causation).

As previously noted, however, there is caselaw in this Circuit suggesting that, in light of the 2019 amendment to the NYSHRL, the more permissive standard under the NYCHRL should be applied to NYSHRL retaliation claims accruing after 2019. *See, e.g.*, *McHenry*, 510 F. Supp. 3d at 68 (noting that "the NYSHRL was amended to direct courts to construe the NYSHRL, like the NYCHRL, liberally . . . regardless of whether federal civil rights laws . . . have been so construed" (cleaned up)); *Arazi v. Cohen Bros. Realty Corp.*, No. 20-CV-8837 (GHW), 2022 WL 912940, at *16 (S.D.N.Y. Mar. 28, 2022) (applying the NYCHRL's "more liberal pleading standard" to NYSHRL retaliation claim on a motion to dismiss); *Ward v. Cohen Media Publ'ns LLC*, No. 22-CV-6431 (JLR), 2023 WL 5353342, at *13 (S.D.N.Y. Aug. 21, 2023) ("As to [Plaintiff's] claims under the post-amendment NYSHRL and NYCHRL, a plaintiff need only allege that she took an action opposing her employer's discrimination, and that, as a result, the employer engaged in conduct that was reasonably likely to deter a person from engaging in such action."); *Edelman*, 708 F. Supp. 3d at 435 n.11 (S.D.N.Y. 2023) (evaluating NYSHRL retaliation claim on motion for judgment notwithstanding the verdict and acknowledging the "more liberal standards that apply to claims that accrued on or after October 11, 2019"). The Court agrees with this approach and will apply it at trial. Therefore, based on its analysis of Plaintiff's NYCHRL

claim, the Court finds Plaintiff's evidence also suffices to sustain Plaintiff's NYSHRL retaliation claim.

### B.    Weaver's Individual Liability

Defendants argue that Weaver cannot be found individually liable for Plaintiff's retaliation claims under the NYSHRL and NYCHRL.[22]  (Defs.' Reply, at 14–15.)  The Court disagrees.

Both the NYSHRL and NYCHRL prohibit retaliation by "any person," *see* N.Y. Exec § 296(7); N.Y.C. Admin. Code § 8-107(7).  Thus, courts have consistently held that "individual employees can be held liable for retaliation under *both* the NYSHRL and the NYCHRL," for their own retaliatory conduct.  *Kulick v. Gordon Prop. Grp., LLC*, No. 23-CV-9928 (KPF), 2025 WL 448333, at *13 (S.D.N.Y. Feb. 7, 2025) (emphasis in original).[23]

Here, Defendants first assert that Weaver cannot be held individually liable as a matter of law because Plaintiff's retaliation claims against the principal, Uncle Nearest, are "unsubstantiated." (Defs.' Br. at 24.)  As the Court has found that Plaintiff can prove her NYSHRL and NYCHRL retaliation claims and that they will proceed to trial, this argument is without merit. Defendants also contend that, viewing Weaver's actions in isolation, a jury could not reasonably find that she personally participated in any retaliation against Plaintiff.  (*Id.* at 24–25; Defs.' Reply

---

[22] Again, though Plaintiff appears to argue that Weaver is also individually liable on Plaintiff's sexual harassment claims for aiding and abetting Harper's sexual harassment, Plaintiff did not plead an individual harassment claim against Weaver in her Amended Complaint. (Am. Compl. ¶¶ 96–103, 118–128). The Court thus considers Plaintiff's arguments on Weaver's individual liability only to the extent they apply to her retaliation claims under the NYSHRL and NYCHRL.

[23] Defendants briefly discuss the New York Court of Appeals holding in *Doe v. Bloomberg L.P.*, that a defendant's status as a supervisor or chief executive officer alone is not enough to impute liability for an employee's discriminatory acts.  *See Nezaj v. PS450 Bar & Rest.*, 719 F. Supp. 3d 318, 329–30 (S.D.N.Y. 2024) (discussing *Doe*, 167 N.E.3d at 454).  That principle, however, has no application where, as here, the plaintiff alleges that the supervisor directly participated in the alleged retaliation.

at 15.)  However, this argument is plainly contradicted by the evidence, which shows that Weaver was responsible for and directed all of the alleged retaliatory action against Plaintiff: Weaver's communications following Plaintiff's internal complaint, Weaver's decision to initiate and her involvement in the allegedly bad faith investigation, Weaver's decision to separate Plaintiff from Michielli, Weaver's denial of certain event proposals, and Weaver's decision to exclude Plaintiff from company-wide emails for a period of time.  Weaver's personal liability depends on the same factual disputes at issue in Plaintiff's retaliation claims against Uncle Nearest.  Thus, as all of the alleged retaliatory conduct traces back to decisions made by Weaver, she can be held directly liable for retaliation under both the NYSHRL and NYCHRL, and those claims against her will proceed to trial.

\*     \*     \*

Defendants' motion for summary judgment on Plaintiff's NYSHRL and NYCHRL retaliation claims against both Uncle Nearest and Weaver is therefore denied.

### III.    Plaintiff's NYLL Claim

Plaintiff asserts that Defendants violated NYLL § 191(1)(c) and § 191-b by failing to pay Plaintiff the full bonus amount she was entitled to in the third quarter—July, August, and September—of 2021.  (Pl.'s Br., at 23–25.)  On this claim only, the Court grants Defendants' motion for summary judgment.

Under the NYLL, "[a] commission salesperson shall be paid the wages, salary, drawing account, commissions and all other monies earned or payable in accordance with the agreed terms of employment," N.Y. Lab. L. § 191(1)(c), and "[a] sales representative . . . shall be paid the earned commission and all other monies earned or payable in accordance with the agreed terms of the contract," *id.* § 191-b(3).  This applies only to "wages," which is defined as "the earnings of

35

an employee for labor or services rendered, regardless of whether the amount of earnings is determined on a time, piece, commission or other basis." *Fetet v. Altice USA, Inc.*, No. 21-CV-1512 (DLC), 2021 WL 2941917, at *5 (S.D.N.Y. July 12, 2021) (quoting N.Y. Lab. L. § 190). Though "wages" does not include a discretionary bonus awarded based on the employer's overall financial success, it does embrace "bonuses that are 'expressly linked' to the employee's 'labor or services personally rendered,' such as 'guaranteed and non-discretionary' bonuses." *Id.* (quoting *Ryan v. Kellogg Partners Institutional Servs.*, 968 N.E.2d 947, 956 (N.Y. 2012)).

Regardless of whether the bonuses under Uncle Nearest's Full-Time Brand Steward Incentive Plan constitute "wages" under the NYLL, the undisputed record establishes that Plaintiff was not entitled to the "maximum" bonus amount she claims was withheld. Plaintiff's reliance on Weaver's August 26, 2021 text message that, in light of the whiskey shortage, "everyone's max bonus will be paid out for Q3, no matter what," (Weaver Text 8/26/2021, Dkt. 50-16, at ECF 2–3), does not save her claim. Plaintiff was aware that she needed to submit documentation regarding her work during each applicable time period in order to receive her bonus. (Pl.'s 56.1 ¶ 121.) It is undisputed that, for the third quarter of 2021, all Brand Stewards who submitted the required documentation received bonus compensation, whether their metrics were achieved or not. (*Id.* ¶ 126.) Indeed, Plaintiff was paid bonuses, $900 each, for the two months in the third quarter of 2021 for which she did submit proper documentation, i.e., July 2021 and August 2021. (*Id.* ¶¶ 123–24; Menos Dep. at 433:9–434:8.) No bonus compensation was paid to Brand Stewards who did not submit the required documentation in the third quarter of 2021, and Plaintiff did not submit the proper paperwork for September 2021. (*Id.* ¶¶ 125, 127.)

Thus, based on the undisputed evidence, Plaintiff received bonuses for which she submitted proper documentation, which was for two of the three months in the third quarter of 2021, and she

was properly denied the bonus for September 2021 because she failed to submit the required paperwork.  Though Plaintiff testified that the "maximum" bonus amount per month was $1,000, (Menos Dep. at 520:12–18), the Full Time-Brand Steward Incentive Plan signed by Plaintiff on October 2, 2020, and attached to her opposition papers shows that the maximum amount per month was $900, (Uncle Nearest Incentive Plan, Dkt. 50-9, at ECF 2).  Lastly, Plaintiff's argument that she should have been reminded to submit the paperwork is without any evidentiary support and is thus unavailing.

Accordingly, because Plaintiff cannot show that Defendants violated NYLL § 191(1)(c) and § 191-b with respect to bonus payments in the third quarter of 2021, Defendants' motion for summary judgment on Plaintiff's NYLL claim is granted.

## CONCLUSION

For the foregoing reasons, the Court denies in part and grants in part Defendants' motion for summary judgment.  The Court grants Defendants' motion only as to Plaintiff's NYLL § 191(1)(c) and § 191-b claim, which is dismissed.  Plaintiff's NYSHRL and NYCHRL claims for sex discrimination and harassment against Defendant Uncle Nearest, and for retaliation against Defendants Uncle Nearest and Weaver shall proceed to trial.  The parties are directed to file a proposed Joint Pre-Trial Order by May 27, 2025.

SO ORDERED.

*/s/ Pamela K. Chen*
Pamela K. Chen
United States District Judge

Dated: March 25, 2025
         Brooklyn, New York

37